HENDERSON v. THE PEOPLE EX REL. WINGATE.

1. METHOD OF APPROPRIATION.—The act of March 15, 1889, appropriating to the Soldiers' and Sailors' Home a gross sum, "out of any funds in the treasury not otherwise appropriated," does not amount to an appropriation out of the revenues of a particular year or years merely because it provides that a part of such sum may be *used* during a particular year.

2. PAYMENT OF APPROPRIATION.—In order to compel the state auditor by *mandamus* to issue his warrant for an appropriation, it must clearly appear, either, that there were at the date of the appropriation funds in the treasury not otherwise appropriated,— that is, revenue then provided for by law and applicable for such appropriation sufficient to pay the same,— or, that the general assembly making such appropriation did, within constitutional limits, provide for levying a sufficient tax to pay such appropriation within the proper fiscal years.

3. PREFERRED APPROPRIATION.—A general appropriation act to defray the expenses of the executive, legislative and judicial departments of the state government must take precedence over an appropriation for the Soldiers' and Sailors' Home.

4. VOID APPROPRIATION.—It is the duty of every public officer connected with the administration of the state finances to treat as void each and every appropriation in excess of constitutional limits. Opinion, *In re Appropriations*, 13 Colo. 323, 326, approved and applied.

•   :

*Error to District Court of Arapahoe County.*

PROCEEDING by *mandamus* against the state auditor to compel him to issue his warrant for a certain legislative appropriation.

Hon. John W. Wingate, treasurer of the Soldiers' and Sailors' Home, was relator, and Hon. John M. Henderson, auditor of the State of Colorado, was respondent below. A peremptory writ of *mandamus* was awarded against respondent in favor of relator. Respondent seeks a reversal of the judgment by writ of error.

Mr. J. H. MAUPIN, attorney-general, and Mr. H. BABB, for plaintiff in error.

Mr. JOHN A. COULTER, for defendants in error.

PER CURIAM. By an act of the general assembly, approved March 15, 1889, it was provided that a commission should be appointed to establish and maintain a Soldiers' and Sailors' Home in this state for the care and treatment of honorably discharged soldiers, etc. Section 5 of said act is as follows:

" The sum of forty thousand dollars, or so much thereof as may be necessary, is hereby appropriated out of any funds in the treasury not otherwise appropriated, to be expended under the direction of said commission for the erection and maintenance of said home for the year 1889 and the year 1890, of which sum not more than twenty-five thousand dollars shall be used during the year 1889; and all moneys paid by the treasurer of the state to the treasurer of this commission shall be upon the attested vouchers, signed by the president and secretary of said commission." Session Laws, 1889, p. 345, 346.

From the record in this case it appears that of the $40,000 thus appropriated only $1,000 has been paid; that on October 2, 1889, application was made to Hon. Louis Schwanbeck, then auditor of state, by the presentation of a properly attested voucher, signed by the president and secretary of said

commission, to issue his warrant as auditor for the further sum of $15,000, and that he refused such application ; also, that on May 13, 1891, respondent upon presentation of a like voucher, refused to issue his warrant as auditor therefor.   The object of this proceeding is to compel the issuance of such warrant.

It has been assumed by counsel in argument that section 5 of the act in question provided for an appropriation of $25,000 out of the revenues of the state treasury for the year 1889, and a further appropriation of $15,000 out of the revenues for the year 1890.   This is incorrect.   The act did not make an appropriation out of the revenues of any particular year.   It made an appropriation of the gross sum of $40,000 " out of any funds in the treasury not otherwise appropriated," and provided that $25,000 of such sum might be *used* during the year 1889.   This appears to have been the common method of making appropriations prior to the rendering of the opinion by this court. *In re Appropriations*, 13 Colo. 316.   At page 324 of that opinion the objections to such method were pointed out.   The present case forcibly illustrates such objections.

Section 16 of article 10 of the constitution provides :

" No appropriation shall be made, nor any expenditure authorized, by the general assembly, whereby the expenditure of the state, during any fiscal year, shall exceed the total tax then provided for by law, and applicable for such appropriation or expenditure, unless the general assembly making such appropriation shall provide for levying a sufficient tax, not exceeding the rates allowed in section 11 of this article, to pay such appropriation or expenditure within such fiscal year.   This provision shall not apply to appropriations or expenditures to suppress insurrection, defend the state, or assist in defending the United States in time of war."

This section of the constitution must control in determining whether the appropriation under consideration is or is not valid.   To warrant the issuance of the peremptory writ against the auditor in this proceeding it must clearly appear, either

that there were, at the date of the appropriation, "funds in the treasury not otherwise appropriated," that is, revenue "then provided for by law, and applicable for such appropriation" sufficient to pay said sum of $15,000, or, that the general assembly making such appropriation did, within constitutional limits, provide for levying a sufficient tax to pay such appropriation within the proper fiscal years.

Inasmuch as the appropriation acts passed in 1889 do not specify the revenue of any particular year out of which such appropriations are to be paid, we have no means of determining whether any particular appropriation made in 1889 was or was not in excess of the constitutional limit, except as we compare the aggregate apropriations made in that year with the total revenues for the fiscal years 1889 and 1890.

From careful examination it appears that the appropriations made in 1889 exceeded the revenues provided for the years 1889 and 1890 about $750,000, and so were excessive and unconstitutional to that extent. It further appears that when relator demanded the issuance of the auditor's warrant, and also when the evidence in this case was taken, over $153,000 included in the general appropriation act for the years 1889 and 1890 remained unpaid for want of funds or revenue which might be lawfully anticipated to meet the same. Said general appropriation act having been passed to defray the expenses of the executive, legislative and judicial departments of the state government, must take precedence over the appropriation sued for by relator. See *In re Appro-. priations*, 13 Colo. 328. Thus it appears that the general assembly did not, in the manner specified by the constitution, provide the revenue to pay the appropriation in controversy, and so the auditor was in duty bound to refuse to issue his warrant therefor.

While it is to be regretted that the appropriation of 1889 for so worthy an object as the Soldiers' and Sailors' Home should fail, it is gratifying to know that in 1891 another appropriation, though for a less amount, was made in favor of

the same institution, and that the latter appropriation has been utilized. Session Laws, 1891, p. 324.

Upon mature consideration we do not feel justified in relaxing the rule concerning appropriations announced in 13 Colo. 323, 326, to the effect, that it is the duty of every public officer connected with the administration of the state finances to treat as void each and every appropriation in excess of constitutional limits. It is only by a strict observance of this rule by all departments of the government that the financial credit of the state can be upheld, and troublesome litigation and ultimate loss, either public or private, avoided.

The judgment of the district court must be reversed.

*Reversed.*