GOODYKOONTZ v. THE PEOPLE EX REL. SAWYER.

1. SOLDIERS' AND SAILORS' HOME.

The Soldiers' and Sailors' Home is entitled to be supported by the state the same as other state institutions, except that those institutions in which the inmates are involuntarily confined may be entitled to preference, in case the public revenues are not sufficient for all.

2. APPROPRIATIONS—REVENUE.

Every legislative act making an appropriation where the money appropriated is not actually in the treasury, should specify the revenue of the particular fiscal year out of which the appropriation is to be paid; but an act which does not definitely specify such revenue is not void, *provided* such revenue can, from the language and purposes of the act, be ascertained with reasonable certainty.

3. ORDER OF PAYING APPROPRIATIONS.

The state auditor is bound, after reserving sufficient funds for the payment of preferred appropriations and expenses, to issue warrants for other appropriations in the order of the taking effect of the legislative acts making such other appropriations, taking care never to issue warrants in excess of the funds or revenues provided for their payment.

4. RATE OF TAXATION.

Under existing statutes, the revenue of a particular fiscal year cannot be definitely determined until the state board of equalization has determined whether or not it will fix the rate of taxation for such year lower than four mills on the dollar.

5. ANTICIPATING REVENUES.

For some purposes the public revenue may be anticipated and drawn upon when the taxes have been actually levied according to law, but the levy itself cannot be thus anticipated and drawn upon.

*Error to the District Court of Arapahoe County.*

APPLICATION in the district court for writ of *mandamus.* Judgment was rendered awarding the peremptory writ commanding the state auditor to issue his warrant for the payment of the residue of a certain legislative appropriation for the Soldiers' and Sailors' Home.    The auditor seeks a review and reversal of the judgment by writ of error.

Messrs. THOMAS, HARTZELL, BRYANT & LEE, for plaintiff in error.

Messrs. Felker & Lee, for defendant in error.

Mr. Justice Elliott delivered the opinion of the court.

1. To care for the nation's defenders when they have become infirm and indigent is a public as well as a patriotic duty, recognized by all civilized countries. In this state such duty has the sanction of the constitution. Article 8 provides:

### "STATE INSTITUTIONS.

"Section 1. Educational, reformatory and penal institutions, and those for the benefit of the insane, blind, deaf and mute, *and such other institutions as the public good may require,* shall be established and supported by the state, in such manner as may be prescribed by law."

The Soldiers' and Sailors' Home, established by the act of 1893, is a state institution; and it is entitled to be supported by the state the same as other state institutions, except that those institutions in which the inmates are involuntarily confined may be entitled to the preference in case the public revenues are not sufficient for all.

2. The controversy in this case arises over the following legislative act:

"Section 1. The sum of forty thousand (40,000) dollars is hereby appropriated out of the general fund to be expended by the board of commissioners of the Soldiers' and Sailors' Home, for increasing the facilities for the payment of certain debts already incurred and for the maintenance thereof, for the years 1893 and 1894.

"Approved (with emergency clause) April 3, 1893." Session Laws, p. 56.

Every legislative act making an appropriation where the money appropriated is not actually in the treasury (as in this case), should specify the revenue of the particular fiscal year out of which the appropriation is to be paid. This view has been repeatedly expressed. *In re Appropriations*, 13 Colo. 316; *Henderson v. The People ex rel.*, 17 Colo. 587. This

doctrine is based upon the language of our constitution in reference to appropriations—language well calculated to protect the credit of the state, and (if observed) certain to prevent the accruing of indebtedness by reason of appropriations or expenditures for the ordinary purposes of the government.

In this case it is urged with much force and reason that we should declare the appropriation made in 1893 for the Soldiers' and Sailors' Home *void* because it does not specify with sufficient particularity the fund or the revenue out of which the same is to be paid. It is strange that the act should have been passed in such form in view of the decision rendered just before the meeting of the last general assembly relating to an appropriation for the same institution. See *Henderson v. The People, supra.* But we are not prepared to hold that every appropriation made in such form is void, though it is clear that if the legislature fails to specify definitely the revenue of the fiscal year out of which an appropriation is to be paid, where the money is not already in the treasury, the auditor must determine such question for himself, or else refuse to issue his warrant therefor. The auditor is not authorized to exercise an arbitrary or irreversible judgment in such matter, but he may determine the question for himself, *provided* he can from the language and purposes of the act ascertain with reasonable certainty the fund or revenue out of which it was intended the appropriation should be paid. He must necessarily observe the greatest caution in determining such question; otherwise he may become responsible for issuing warrants in excess of the revenue.

3. The auditor should not exercise any personal preference in drawing warrants for the payment of legislative appropriations. His duty is to marshal the treasury assets and appropriations, and act in reference thereto by an impartial rule. Taking into account the funds on hand, and the revenues to be anticipated, based upon actual levies, the auditor is bound, after reserving sufficient funds for the payment of preferred appropriations and expenses, to issue warrants for other ap-

propriations in the order of the taking effect of the legislative acts making such other appropriations, taking care never to issue warrants in excess of the funds or revenues provided for their payment.

In the present case the auditor seems to have concluded that the meaning of the act in question was that one half of the appropriation should be paid out of the revenue of the fiscal year ending November 30, 1893, and the other half out of the revenue of 1894. Such conclusion was, we think, fairly warranted by the language of the act considering the uses and purposes for which the appropriation was made.

4. It appears that the auditor issued his warrant for $20,000, or one half of the appropriation, payable out of the revenues of 1893; but when, in July, 1894, he was requested to issue for the remaining $20,000, he refused. That such refusal was justifiable at that time will appear from a brief consideration of our present system of revenue laws.

Article 10 of the constitution provides:

" SEC. 2. The general assembly shall provide by law for an annual tax, sufficient, with other resources, to defray the estimated expenses of the state government for each fiscal year."

Under such constitutional mandate, the general assembly has legislated in a peculiar manner. Certain specific levies of a fractional mill each have been made for certain specific purposes, as for the " Capitol Building Fund," " University," " Agricultural College," etc.; and then it is provided by general law that " there shall be levied and assessed upon the taxable real and personal property within the state in each year, the following taxes: " For state purposes, four mills on a dollar, when no lower rate is directed by the state board of equalization." Session Laws, 1885, p. 318. The board is required to act in such matter at its " September meeting " in each year. 2 Mills' An. Stats., secs. 3848, 3849. This subject was much considered in the recent case of *The People ex rel. v. The State Board of Equalization*, ante, p. 220.

When the auditor was requested to issue his warrant for the last half of the appropriation, and when this proceeding was commenced in August, 1894, the state board had not held its September meeting for that year, and so the rate of taxation for state purposes could not be said to be definitely fixed. The board might, in strict compliance with the statute, have directed the levy of the smallest fraction of a mill on the dollar, in addition to the specific levies. It is clear, therefore, that the auditor could not, *before the September meeting*, determine the amount of the revenue for such fiscal year, and, hence, could not determine whether there would be sufficient money in the treasury to pay the warrant, if issued.

5. In the view above taken, the commencement of this proceeding before the tax levy was definitely fixed was certainly premature. It has been held that for some purposes the public revenue may be anticipated and drawn upon when the taxes have been actually levied according to law, but we are not advised that any court has gone so far as to hold that the levy itself may be thus anticipated and drawn upon.

While the auditor must be sustained in refusing to issue the warrant at and before the commencement of this proceeding, yet, as the state board of equalization did not direct a tax levy for 1894 at a lower rate than four mills on the dollar, and such rate of taxation being now definitely fixed, it may be that the Soldiers' and Sailors' Home is *now* entitled to the residue of its appropriation. The appropriation, it seems, was made at an earlier date than many of the appropriations of the last legislative session, and the residue of it should be paid, according to its priority, out of the balance, if any, of the revenues for the fiscal year of 1894, after making proper allowance for preferred appropriations.

Applying the proper rule, it would seem to be a matter of easy computation to determine whether the residue of the appropriation in controversy can or cannot be lawfully paid out of the revenues of 1894.

The writ of *mandamus* being a matter of strict legal right, the judgment of the district court must be reversed, and the cause remanded with directions to dismiss the present proceeding.

*Reversed.*