[No. 1672.]

NANCE (KEPHART SUBSTITUTED), STATE TREASURER, v.
STUART, ASSIGNEE OF THE COLORADO SAVINGS BANK.

1. REVENUE—STATE WARRANTS—MANDAMUS.

Where mandamus proceedings are instituted against the state treasurer
to compel the payment of a warrant which is a preferred claim
under an actual or continuing appropriation, and the petition ex-
hibits the fact that there is money in the treasury applicable to the
payment of the warrant, and the treasurer admits the money, but
refuses payment on the ground that other warrants of the same
class have been issued and duly registered in his office, sufficient to
exhaust the money, that are entitled to priority of payment, it is
incumbent on the treasurer to plead, and the burden is on him to
prove a registry that would exhaust the money in the treasury.
The opinion in *Nance v. Stuart*, 7 Colo. App. 510, commented on and
explained.

2. REVENUE—EXPENSE OF STATE GOVERNMENT—OFFICER'S SALARIES
—APPROPRIATION—PREFERRED CLAIMS.

The expenses of the state government are preferred claims and must
be paid out of the public revenue to the exclusion of all other claims
against the state. The three departments of government stand on
an equal footing so far as their claims against the public revenue
is concerned, and the salaries of necessary clerks and assistants
and the necessary expenses of carrying on the affairs of government
constitute preferred claims equally with the salaries of officers
whether the same are provided for by the general appropriation
bill or are such as constitute a continuing appropriation against
the public revenue.

3. STATE WARRANTS—REGISTRATION—EVIDENCE—MANDAMUS.

In a mandamus proceeding against the state treasurer to compel him to
pay a warrant where the defense was that a sufficient number of
warrants of the same class had been registered prior to the one in
controversy to exhaust the fund in the treasury applicable to such
warrants, a copy of the register, that merely showed the number
of the warrants, the amounts and the purposes for which they were
issued, introduced in evidence was not sufficient proof of the war-
rants to establish them as prior registered claims to the one in con-
troversy.

*Appeal from the District Court of Arapahoe County.*

Mr. BYRON L. CARR, attorney general, and Mr. CALVIN E. REED, assistant attorney general, for appellant.

Messrs. TOLLES & COBBEY, for appellee.

BISSELL, J.

For the second time this case is before the court. It came up on appeal originally from a judgment rendered in favor of the relator Stuart. This was reversed. He obtained another judgment directing a peremptory writ of mandamus to issue. The state again appears and re-presents the case. The imperfect condition of the record on the original appeal which is reported in the 7 Colo. App. 510, under the title of *Nance v. Stuart*, did not permit us to decide the question at issue between the parties, and when the case was sent back it was with directions to the court below to give the parties leave to amend their pleadings, introduce their testimony, and bring into the record the facts on which the ultimate decision must rest. Unfortunately, so far as we are able to see, the case is in a condition almost as unsatisfactory as it was originally, and we are unable to find in the record enough to enable us finally to determine the litigation. Possibly, there is enough, but we doubt our right to act as a *nisi prius* court and on the record consider and determine the matter. The proof is inadequate. We held on the first appeal that where mandamus proceedings were begun on a warrant which as pleaded was a preferred claim under the constitution as it has been interpreted by the various decisions of the supreme court, if the treasurer sought to defend because the funds were exhausted by payment or registration, it was incumbent on him to plead the fact as a defense. We discover from the arguments of counsel that the decision has been interpreted a little out of the line of the intention of the court, although, possibly, wholly consistent with its phraseology. I wrote the opinion as I am writing this, and I think it is quite possible I failed adequately to limit and define the

position of the court, and as the original opinion now stands it may, possibly, be a little too broad.  What I intended to say, and the conclusion of the court was, that where mandamus proceedings were instituted against the state treasurer to compel the payment of a warrant which was a preferred claim under an actual or a continuing appropriation, and the petition exhibited the fact that there was money in the treasury unexpended and not applicable to the payment of warrants for which calls had been made, if the treasurer refused payment because other warrants of the same class had been issued and were duly registered in his office and therefore entitled under the statute to priority of payment, it was incumbent on him to plead a registry which would exhaust the money in the treasury.  This position undoubtedly admits of discussion and courts might differ in regard to it, but we are so thoroughly of the opinion that the difference between suits where the controversy arises over a claim by a citizen against a citizen, and a claim of a citizen against the state, that we believe this rule ought to prevail.  There is a very wide distinction to be drawn in actions where the state is a party and those which only concern private rights of private persons.  In the first case the citizen is comparatively remediless, having only indirectly the right to institute proceedings against the government and the matters of defense are so entirely within the control of the state officers and within their knowledge only, and the facts by which it is to be established accessible only to them, that we believe this ought to be the rule. Take the present case as a very pronounced illustration of the difficulties under which the private litigant labors when he has a controversy with the state.  Under the decisions of the supreme court which furnish the controlling construction of the constitution, it is quite clear the expenses of the state government are a primary claim on the revenues of the state and must be first paid before any of those revenues can be devoted to the payment of unpreferred claims of any other creditors. The mass of preferred claims is so great, it covers such a wide variety of demands, exists in favor of such a great

number of individuals, that the citizen who seeks to compel payment of warrants would be met with an insurmountable difficulty at the outset, if he was compelled to allege and prove that he was a preferred claimant, that the treasurer had revenues or moneys in his hands unexpended, which under the constitution were properly applicable to the payment of his claim, and then go further, and show that there were no antecedent warrants issued of the same class or entitled to the same equality of right as against these revenues. The register of warrants does not exhibit the facts which enable the claimant to determine this question. The warrants themselves do not on their face always and absolutely determine the question, nor can the citizen ascertain whether a claim which the state treasurer says is of the same class and of equal right, occupies any such position. It may be a claim in favor of a clerk in the treasurer's own office, a clerk in any other office, or an employee of the legislature; it may be for moneys expended by any one of the various state officers in the discharge of public business, and it would be quite impossible for the citizen to decide whether the person named in the warrant was or was not a clerk, or a page or messenger, or whether the money had been expended for the transaction of public business though on its face the warrant might so recite. Under these circumstances, unless the supreme court shall differ with us on the question, we must continue to hold that if the treasurer admits money, according to the allegations of the petition, and the relator asserts a preferred claim which the treasurer does not dispute, he has maintained and made out a *prima facie* case and the burden to show prior registration of antecedent warrants of the same class must rest on the public officer. So much has been written concerning this in explanation of the indefinite and inexact statement in the original opinion and it will therefore stand as the law in this class of cases, unless the supreme court on a review should differ with us. As we have already admitted, it is a question widely open to argument and both judges and lawyers might easily and honestly

differ on the question of priority and as to the point where the burden ought to be cast in such cases. The attorney general seems to have thus construed the original opinion, at least to the extent of the contention that under the rule laid down in that case the burden was on him to show this defense. We therefore have a record which contains a petition showing the election of Stuart to the district bench, the rendition of his services, the issuance of a warrant, its presentation to the treasurer and nonpayment, and moneys in the state treasury properly applicable to the payment of that warrant as a preferred claim, unless what the state pleaded by way of defense was well pleaded and has been sufficiently established. There are a great many questions presented by the assignment of errors, although the abstract as printed, and the briefs of counsel, discuss but one. We shall therefore confine ourselves to this one proposition and decide it only, and reverse the case for lack of proof exhibited in the record, holding that while as between private litigants we might be entitled to indulge in a presumption as to the finding of facts to support the judgment, yet, as between the citizen and the state we regard it as our duty to pursue a different policy, and reaching the conclusion which we have, and discovering as we do the basis on which the court below put it, which is an erroneous one, that the case should be sent back and retried on the lines which we shall indicate. This is almost as unsatisfactory as the former judgment, and the relator, who is Thomas B. Stuart, assignee of the Colorado Savings Bank, may possibly feel it a great hardship, but the opinion will be put in such shape that probably the supreme court will take jurisdiction of it, and they can there have a review and perhaps have the law so settled that on a subsequent trial there will be no room for dispute or appeal and the matter be finally and absolutely determined.

We put the case on the broad ground that under article 10 of the constitution, Stuart's warrants are a preferred claim and that he is entitled to have them paid out of the money which is concededly in the hands of the state treasurer as part

of the public revenue, unless that officer can show to the satisfaction of the court that there are in his office, or in the custody of the state, warrants issued on preferred claims of prior registry, which will when called, exhaust the money. As we read the decisions there is no question about the proper construction of this and the other constitutional provisions which control these matters. The supreme court has passed on the questions in numerous cases, and we are quite able to both read and understand the rules which that court has laid down. Not only do we accept them as the declared law and of binding force in all matters of constitutional construction, but on the particular questions considered and decided we believe that court acted wisely, adjudged correctly, and have supported their conclusions with very satisfactory reasons. We are unable to find in the opinions of the learned judges any chance for misconception or misapprehension. The only possible difficulty is one which will be hereafter referred to, which comes from the fact that the particular case wherein the rule was laid down, there was no opportunity for its special or particular application. *In re Appropriations*, 13 Colo. 316 ; *In re House Resolution No. 25*, 15 Colo. 602 ; *Henderson v. The People*, 17 Colo. 587 ; *The Institution, &c., v. Henderson*, 18 Colo. 98 ; *In re Continuing Appropriations*, 18 Colo. 192 ; *The Collier & Cleveland Lithographing Co. v. Henderson*, 18 Colo. 259 ; *In re House Bill No. 168*, 21 Colo. 46 ; *People v. The Board of Equalization et al.*, 20 Colo. 220 ; *Goodykoontz v. The People*, 20 Colo. 374 ; *Parks v. The Soldiers' and Sailors' Home*, 22 Colo. 86.

By these adjudications, it is determined that the expenses of the state government must be paid out of the public revenues to the exclusion of all other claims against the state. It is equally decided that so far as concerns state officers, the officers of the legislature, and the executive officers, the three departments of the government stand on an equal footing and the claims against the revenues created by the operation of these departments stand on a common level and constitute preferred claims against the state revenues. It is equally

clear therefrom that the appropriations for the purposes of the three departments may be in the general appropriation bill and require no special act, and that, generally speaking, as to the expenses of these departments their demands on the revenues should take substantially the position which would result from a continuing appropriation. We do not understand that the learned judge who tried the case reached any other conclusion. He conceded the law to be as it has been summarized, but he went farther and in his opinion which is before us we find the real reason why he entered judgment in favor of the relator without the production of any other proof than was offered and because the proof as it was put, in his judgment, sufficiently established the priority of Stuart's claim on the revenues to entitle him to a peremptory writ.

We now come to the statement of the exact condition of the proof. The state pleaded the registration of a lot of warrants by an answer which substantially set up, I suppose by way of copy, the register of warrants. The pleading seems to exhibit the matters as copies of that book. When it came to the trial of the case the state offered,—calling the deputy auditor for the purpose,—the warrants which had been issued by the auditor, registered, presented for payment and started to identify each warrant. The court then intimated that if this course was to be pursued the case must be heard before a referee for the purpose of finding the facts because of the time that would be consumed in determining the character of the 772 warrants which the state produced and pleaded as of equal rank and therefore with Stuart's were a prior claim on the revenues and sufficient in amount to exhaust the $89,000, which the treasurer admitted he held unexpended at the time of the trial. Under these circumstances by an apparent stipulation of counsel and the consent of the court, a copy of this register of warrants was produced, offered, and received without objection, and on it and it alone, the court proceeded to determine the question whether the 772 warrants which amounted to more than the $89,000, were of equal rank but of prior register to Stuart's and therefore cut

him out.   There is no evidence in the record to establish the character of the claims exhibited by that register.   The only thing before the court which is before us in the record, if we have any right to consider it, is the inferential information contained in the statements on the register, of which one will be a sufficient example of a great many others, viz : " 22,808. Salary Chief Justice Supreme Court $416.66."   It must be conceded that so far as that item is concerned, it might be sufficiently specific and definite proof that a warrant for that sum was drawn to an officer of the judicial department whose claim for salary was a preferred claim on the public revenues. The chief justice was not named on the register, and whether the warrant exhibited it or not, we are unadvised, although presumably it did, as all warrants issued for judicial salaries specify the person to whom they are issued.   The fact that the individual holds an office of that description is a matter of which this or any other court would take judicial notice. If all the lists thus copied from the register were equally specific we could spell out from the record the fact that the persons to whom the warrants were issued were connected with one of the public departments and we might be able to determine from the proof whether in point of fact enough preferred warrants had been registered prior to Stuart's to cut out his claim.   But this cannot be done for two reasons.   In the first place the information afforded by the register is inadequate to enable us to determine the matter.   In the second place, we have no right to turn ourselves into a *nisi prius* court and determine questions of fact which have been left undetermined by that court, and about which there is no sufficient competent evidence in the record to make the matter clearly and plainly discernible.   The list is plainly deficient as proof of many facts or of one fact which the court ought to have found to enable us to render a final judgment. It only takes two or three copies from that list to show the difficulty which the court would experience if it undertook to pass on the pivotal question of fact which we think must be determined in order to decide the real question at issue

between the parties, viz : " 22,613. Clerk Secretary of State, $83.33.    22,657. Expenses of Assistant Counsel of Attorney General, $200,    22,798. Copying Senate Journal, Deputy Secretary of State, $538.20." This is the full copy of the only thing which the state put in evidence. The counsel for the relator did not object and permitted it to be introduced and no other evidence was given that the list of claims contained in the abstract was really a list of warrants issued for purposes which might be gathered from its statements.    It is quite clear that this affords this court at least no basis on which it can render judgment.    How can we tell that the secretary of state had a clerk, or that the individual to whom the warrant was issued was the clerk and that he got warrant No. 22,613 and was entitled to the salary specified in it.    We are equally in the dark as to whether on warrant No. 22,657 any counsel was paid $200 for assistance rendered to the attorney general, nor are we able to determine whether he was properly employed under due authority of law, and whether his expenses were or were not a part of the legitimate expenses of one of the executive officers.    It is equally impossible for us to ascertain whether warrant No. 22,798 was issued to the deputy secretary of state for $538.20, and if so, whether it was properly issued under due authority of law and constituted a necessary and essential part of the expenses of that department of the state government.    These are illustrations of the information furnished by the list and there are dozens and dozens, in fact you might say, almost hundreds of warrants registered of this indefinite description and about which we have no information other than that furnished by the register.    The court below seems to have been equally unadvised as to whether these warrants were issued to persons connected as clerks with the various departments of the government and whose claims could under any circumstances be treated as preferred claims of equal rank with the Stuart warrants and of prior right because of prior register.    We are, therefore, wholly unable to decide whether the judgment of the court below was right on the facts and

ought to be affirmed, or whether the error into which the
court fell in its conception of the law led him to the conclu-
sion which resulted in the entry of an erroneous judgment.
We shall not, as we might perhaps in a case between private
citizens, undertake to uphold the judgment because of the
failure of the defense because this is a controversy between a
claimant on the public revenues and a public officer charged
with grave responsibilities and public duties, and who is
bound under the law to perform his duties in exact accord
with the statutes and the constitution as they have been
interpreted by the supreme court. We do not feel at liberty
to enter a judgment and compel the treasurer to pay the
Stuart warrants until we are satisfied that the claim ought to
be paid because there is money in the treasury unexhausted
either by antecedent payments or by prior register of pre-
ferred warrants. A judgment of this description would work
the greatest and rankest injustice to the treasurer who by the
judgment would be compelled to pay. The other preferred
claimants of prior registration, if such be the fact, would
thereafter have the right to come in and compel the treasurer
to pay their claims. The result would be that under our
judgment he might unlawfully and wrongfully pay a claim
which in subsequent litigations could not be allowed as a
credit to him or a charge on the revenues, and he would be
compelled out of his own pocket to reimburse the treasury
for the money which he paid under our judgment. In deter-
mining the rights of citizens against the state government,
and in determining the rights of citizens and the obligations
of public officials, we are not at liberty to work out any such
result or to accomplish any such end. Therefore, even at the
risk of possible criticism because of two reversals and no
decision which finally determines the case, we must send the
case back. We have stated this simply by way of an expla-
nation of the court's action, which is perhaps somewhat dif-
ferent from what it would be under other circumstances and
conditions and between private parties. It is not by way of
apology because we believe it to be our duty, but it explains

the difference in the rule which might be adopted by the court under different circumstances and different conditions.

We now come to what the court held. We will premise it by stating that the court found no fact on which we can support the judgment. There are no findings of fact in the record; the court did not undertake to go through the list, determine what were or were not preferred claims, what were legitimate or illegitimate and condense his conclusions into a specific finding on which we can base an opinion. He rather proceeded on the theory which we think is wholly without the lines of the decisions of the supreme court, and is not only not supported by those opinions, but is overthrown by their terms, conclusions and statements as we are able to read them. In rendering his decision he passed on the *Soldiers' and Sailors' Home* case in the 22d Colorado, wherein that court most undoubtedly held that the expenses of the officers of the three departments of the government, executive, legislative, and judicial, constituted a prior charge on the public revenues of the state and might be provided for either in the general appropriation act, or be treated as continuing appropriations and were to be first paid like the salaries of public officers out of those revenues before they were put to any other use or purpose. The learned judge who tried the case was of the opinion that pages, clerks, postmasters, and all the various attendants on the legislature; the clerks in all the various executive departments, clerks in the judicial department, and all the service essential to carrying on the affairs of the government and the persons who were employed in the various offices and absolutely indispensable to the performance of public duties and the execution of public trusts, were not officers within the terms of the constitution, and that warrants issued in payment of their salaries or for the expenses of the offices, were not prior claims on the money which the treasurer had, and he therefore concluded that the treasurer had enough left to pay the Stuart warrants, and that the claims which had been registered prior to Stuart's for these other purposes and to these other persons, were not, because of their priority of

registration, entitled to a priority of claim on the public rev-
enues.   He, therefore, adjudged that Stuart could come in
and was entitled to his peremptory writ.   The opinion of the
court below is reported in the record, and we are able by
reading it to see that this was his conclusion, and was in
reality the basis on which the judgment was rendered.   We
are so clearly of the opinion that this is an infraction of the
provisions of the constitution and is so entirely opposed to
the decisions of the supreme court on that question, that we
are compelled to hold that the judgment which he entered
was of necessity erroneous.   We do this notwithstanding our
holding that the state had the burden to show that the war-
rants were properly registered and included in the claim of
preferred claims, and although we conclude that the state did
not fully discharge this burden or perform this duty.   The
judgment may not be upheld because of the rank injustice it
would work to a public officer and because of the very evi-
dent mistake which the trial court committed in rendering
its judgment and because the citizen may not put his hand
into the public treasury, although he may have been a public
officer, unless in the record there is affirmative evidence
enough to justify the judgment.   It may be that Stuart is
entitled to recover; it may be that the state will be wholly
unable to show enough prior registered preferred warrants
to defeat the claim.   We intend to permit the state to make
the attempt and to compel the trial court to make specific
findings of fact on which we may ultimately determine the
rights of the parties.   We do not believe we are injuring the
litigant in any way because this is a claim by Stuart as the
assignee of the Colorado Savings Bank, and this small amount
of money would in no way aid in winding up the estate or
be of much benefit to its creditors.   We have put the deci-
sion on precise constitutional grounds and have decided only
the question, that under the constitution not only are the
salaries of officers known as such, but the salaries of employees
connected with these various departments and the necessary
operating expenses of them, are equally preferred with the

salaries of the officers themselves. We believe the supreme court has so decided, and although the cases in which they rendered opinions did not permit the exact determination of that question as it was not specifically presented on the record, we believe that the principles on which the decisions are based clearly settle it. Deciding the case in this way, we believe that the litigants will have the opportunity to present this case to the supreme court by appeal or writ of error, and that that distinguished tribunal will have the opportunity to settle the law by which all these cases must be determined.

The judgment will be reversed and sent back for a new trial and findings of fact on the question presented by the record.

*Reversed.*