[No. 4593.]

## CROUTER, AUDITOR OF STATE, v. BENNET, LATE STATE AGENT.

1. **State Revenue—Warrants—Invalid Appropriations—Depleted Fund.**

It is the duty of the state auditor to refuse to draw his warrant against an invalid appropriation, or against an appropriation that has already been exhausted by warrants drawn against it.

2.  Same—Contract—Mandamus.

The legislature authorized the governor to appoint an agent to represent the state in the recovery of school lands from the general government and to fix his compensation, which the governor did. A subsequent legislature made an appropriation to pay the agent the compensation due him which appropriation being invalid because in excess of the revenue provided therefor, another legislature made an appropriation in the same sum for the same purpose. The amount appropriated was paid to the agent on the certificates of the governor but was insufficient to pay his entire compensation and after the appropriation was exhausted the auditor refused to draw any further warrants in favor of said agent although the governor certified to the auditor that there was a certain sum still due him. Held, that the auditor was right in refusing to issue any further warrants to said agent and a peremptory writ of mandamus requiring him to do so ordered by the district court was erroneous and will be reversed.

*Error to the District Court of Arapahoe County:*
*Hon. F. T. Johnson, Judge.*

Petition for a writ of mandamus. The fifth general assembly (Session Laws 1885, p. 328) passed an act empowering the governor to appoint and in pursuance thereof the governor did appoint the appellee Bennet state agent for the state of Colorado, whose duty thereunder it became to prosecute to final decision all disputed claims of this state against the government of the United States for all school lands which were due or thereafter to become due to the state from the general government on account of Indian or other reservations in the state of Colorado. In accordance with the provisions of the act the appellee's compensation was fixed by the governor, and under the terms of his employment and at the compensation agreed upon the appellee recovered for the state large tracts of land.

Thereafter the seventh general assembly (Session Laws 1889, p. 30), by a separate bill appropriated out of the money in the treasury not otherwise appropriated from the general fund the sum of

$31,250, or so much thereof as was necessary, to pay appellee the compensation due him for the recovery of the lands under this appointment; and the eighth general assembly (Session Laws 1891, p. 25) passed an act almost in the same language as the act of 1889 for precisely the same amount of money and from the same fund and for the same purpose. Both of these acts provided that when the lands so recovered by the state had been selected and the selection approved as the act provided, and the title became vested in the state, that the governor should certify to the auditor of state the number of acres recovered and the amount of moneys due to the state agent under his contract, whereupon it became the duty of the auditor, upon presentation of the claims by Bennet, to credit the same with the amount or amounts so certified and to draw warrants on the state treasurer therefor in his favor.

From time to time, and prior to May 28, 1902, the governor, in performing the duty thus imposed upon him, certified to the auditor that there was due to Bennet, the appellee, as state agent, the aggregate sum of $31,181.84, and the auditor drew his warrants therefor upon the state treasurer payable to Bennet out of the general fund, and the same were paid to him. Afterwards and during the year 1902 the governor made an additional certificate or certificates to the auditor that there was still due to appellee as state agent, under his contract, the sum of $4,995.38, upon presentation of which certificates by the appellee the auditor refused to draw his warrants therefor except for $68.16, which he drew and which brought the aggregate amount of all warrants up to. the full amount of the appropriation, whereupon this petition was filed asking for a writ of mandamus to compel the auditor to draw warrants for the full amount of the certificates as presented.

The answer to the alternative writ, which set up the facts hereinbefore reproduced, admits the allegations of the passage of the act of 1885, the appointment of the appellee as state agent, the compensation which appellee was to receive, the prosecution of the claims, the procuring for the state of the quantity of land which the petitioner selected, the passage of the two acts of appropriation set out in the petition (of which the court takes judicial notice), admits the drawing of the warrants and their payment by the treasurer to the appellee as alleged, and avers that the entire appropriation of $31,250 made by the act of 1891 for the benefit of the petitioner has been paid to him on account of the services performed under the contract; admits the issuing of the additional certificates by the governor and the presentation of the same to him by the petitioner, and that he refused to credit petitioner's claim for the additional amount of $4,995.38, except for $68.16, and refused to draw his warrant therefor upon the state treasurer because, as he says, the appropriation made by the act of 1889 had been, by a former auditor of state, long since and before respondent took office expended and exhausted by warrants properly drawn thereupon, and that the entire appropriation made by the act of 1891 had been paid to and received by the petitioner upon certificates duly drawn by the governor and properly credited by respondent.

There was a motion by petitioner for judgment on the pleadings, which was allowed, and the alternative writ of mandamus was sustained, and a peremptory writ ordered as prayed for.

Mr. CHAS. C. POST, attorney general, and Mr. JAMES D. MERWIN and Mr. GEORGE M. POST, assistants attorney general, for plaintiff in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

Though it is not expressly stated in the pleadings, this court takes judicial notice that the appropriation of 1889 was invalid because in excess of the revenue provided therefor; so that, not only for that reason, but because the answer avers that it had been expended before the respondent entered upon the duties of his office and was entirely beyond his reach and unavailing for any warrants that he might draw upon it, it was clearly the duty of that officer to refuse to draw his warrant upon that depleted fund if, in fact, it ever existed or was availing.

The question then is, whether it was the duty of the auditor to draw his warrants after the appropriation made by the act of 1891 was exhausted.

The allegation of the answer is that the entire appropriation of $31,250 made by this act had been expended, and that the same and all thereof had been paid to and received by the petitioner. It is well settled in this jurisdiction that it is not only the right but the constitutional duty of the state auditor to refuse to draw warrants when no sufficient revenue has been provided or no appropriation made therefor. No revenue or appropriation having been provided by the general assembly for the benefit of the petitioner beyond the $31,250 which he has received, the auditor was clearly right in refusing to draw his warrant for any amount in excess thereof, and the district court was manifestly wrong in ordering him to do so. This question has been decided so often by this court that it is hard to see how the district court could have so misapprehended its plain duty in the premises.—*Goodykoontz v. People,* 20 Colo. 374, 376; *Henderson v. People,* 17 Colo. 587, 590; *In re Loan of School Fund,* 18 Colo. 195, 200; *People ex rel. v.*

*Butler,* 24 Colo. 401, 408; *Gartley v. People,* 24 Colo. 155, 166; *Henderson v. Lith. Co.,* 2 Colo. App. 251, 258.

The closing language of the opinion of Judge Reed in the case last above cited is peculiarly applicable here. He says:

"The failure to pay the debt undoubtedly works a hardship upon the defendant. It accepted the contract in good faith; with no doubt in regard to its validity, performed its part. No question is made as to price—that it should be paid goes without saying, but public officials are bound by inexorable law in regard to the disposition of public money, and are properly made responsible for all disbursements, and should be protected. Further legislation seems to be needed to provide for the payment of this debt."

The judgment of the district court is reversed, and the cause remanded with instructions to vacate the judgment heretofore entered and to dismiss the proceedings at the cost of petitioner.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.