## BRAINARD and another *against* BUSHNELL.

Where sundry writs of attachment, in favour of different creditors, were served, by different officers, on the same personal property, in the course of the same day, and the returns on all the writs, except one, stated the time of day when the service was made, and that one stated only a service on that day ; it was held, that it was neither matter of legal presumption

nor construction, that the latter writ was served at the same time with any of the other writs.

In such case, parol evidence is admissible to show at what time of the day specified in the return, the service was in fact made; such evidence being entirely consistent with the return; for though a day, in legal consideration, is *punctum temporis*, without fractions, yet where justice requires it, the exact time when an act was performed, may be shown, by parol evidence.

Where two or more writs of attachment, are served, by different officers, at different times, on the same property, it is incumbent on the officer serving the latter writ, to give reasonable notice thereof, to the officer who served the prior one; but the law prescribes no form or manner of notice; and neither a copy of the writ and return, nor any other written notice, is necessary.

This was an action on the case, stating, That the *Smith Manufacturing Company* being indebted to the plaintiffs, by book, the plaintiffs, on the 17th of *July*, 1829, prayed out a writ of attachment against that company, and delivered it to *Matthew G. Warner*, a constable, to be served and returned; that *Warner*, by virtue of such writ, attached certain articles of personal property, of the value of 4000 dollars, belonging to said company, which property was then held by the defendant, then a deputy sheriff, subject to sundry writs of attachment in his hands which had been levied thereon, and also subject to sundry other writs of attachment levied thereon by *Elijah A. Bingham*, another deputy sheriff, and by said *Warner*, as constable; all of which writs were served previously to the plaintiffs', and of the levy thereof on said articles of property, the defendant, on said 17th of *July*, had notice; that the plaintiffs' writ being duly returned, they recovered judgment, at the term of the county court in *October*, 1829, against the *Smith Manufacturing Company*, for 553 dollars, 12 cents, damages, and costs, for which the plaintiffs afterwards took out execution, dated the 27th of *September* 1831, and delivered it to *Olmsted Gates*, then a deputy sheriff, who, by virtue thereof, having made demand of payment of the same of the debtors therein named, who neglected and refused to pay the same, or any part thereof, and no property being shewn, by said debtors, to the officer, and he being, by the most diligent search, unable to find any whereon to levy, on the 8th of *November*, 1831, while the lien of the plaintiffs, by virtue of their said writ of attachment upon the articles of personal

property above named, was subsisting and in full force, and within sixty days after the incumbrances upon said articles of property, by virtue of writs of attachment levied upon the same prior to that of the plaintiffs, and upon which said writs of attachment judgments had been recovered and executions issued, were removed, having shewn to the defendant said execution, made demand of him of the articles of property above named, upon which the plaintiffs' writ of attachment was levied, and which, at the time of said levy, were held, by the defendant, upon previous attachments, that the same might be disposed of in satisfaction of the plaintiffs' execution ; that at the same time and place, said *Matthew G. Warner* made demand of said property of the defendant to be delivered to said *Gates*, that it might be disposed of in satisfaction of the plaintiffs' execution ; but that the defendant did not retain and keep said articles of property to the end that they might be taken by the creditors of said company in execution, but released and discharged said goods from attachment, and wrongfully and illegally disposed of the same, and did not deliver them to said *Gates*, when demanded by him and *Warner* as aforesaid, but wholly neglected and refused to deliver the same ; and that the plaintiffs' execution, on the 25th of *November*, 1831, was returned wholly unsatisfied ; and that by the neglect and misconduct of the defendant, the plaintiffs have wholly lost their said debt and costs.

The cause was tried at an adjourned term, at *Haddam*, in *November*, 1834, before *Church*, J.

On the trial, the plaintiffs gave in evidence the writ of attachment in their favour against the *Smith Manufacturing Company*, on which *Matthew G. Warner*, the officer who served it, had made return, that he attached, by virtue thereof, the goods mentioned in the declaration, on the 17th of *July*, 1829, at half past 7 o'clock, *A. M.*, subject to sundry previous attachments. The writ was duly returned to the county court, and, on the 23d of *October*, 1829, judgment was rendered thereon. On the 6th of *November*, 1831, an execution, then in full life, was put into the hands of a proper officer, who, by virtue thereof, on the same day, demanded the goods of the defendant ; and the defendant neglected and refused to deliver them. The plaintiffs also gave in evidence an attachment, in favour of one *Parmelee*, against said company, returnable to

the same court, by virtue of which the defendant had, on the 15th of *July*, 1829, at 7 o'clock *A. M.*, attached and taken possession of said goods. In order to show, that the plaintiffs' lien, by their attachment, was subsisting and in force, on the 8th of *November*, 1831, and that the demand on that day, was in proper time, they gave in evidence sundry other attachments in favour of divers individuals, served on the same goods, after the attachment served by the defendant and prior to the attachment of the plaintiffs; *viz.* one by *Elijah A. Bingham*, *July* 16th, at 3 o'clock, *A. M.*; six, by the same officer, at 7 o'clock; two, by the same officer, at 8 o'clock; three, by him, at 9 o'clock; one, by him, at a quarter past 9 o'clock; two, by *Matthew G. Warner*, at a quarter past 11 o'clock; one, by him, at 10 minutes past 1, *P. M.*; one, by said *Bingham*, on the same day, in favour of *Selden Fuller*, on which the officer made return, that he attached said goods, on the 16th of *July* 1829, but without specifying the hour of the day; one, by said *Warner*, on said 16th of *July*, at a quarter past 2, *P. M.*; two, by said *Bingham*, at 28 minutes past 3; one, by the defendant, at half past 5. These twenty-one attachments were duly served and returned, and judgments were obtained thereon, on said 23d of *October*, 1829; and it was admitted, by the defendant, that if the plaintiffs had any right to demand said goods of the defendant, such right would exist whenever the lien of such attachment should expire, computing from said 23d of *October*, 1829, and allowing 60 days of each successive period of service; and that the 8th of *November*, 1831, was in proper time, if the attachment of *Selden Fuller* was at a distinct time from that of the other attachments which were levied on the same day; but if *Fuller's* attachment was made at the same time with either of the other intervening attachments—and the defendant claimed that such was the legal construction or presumption—the plaintiffs admitted, their lien would have expired before the 8th of *November*, 1831. And in order to prove the time of day when *Fuller's* attachment was served, the plaintiffs introduced *Bingham*, as a witness, who testified—subject to the opinion of the court as to the admissibility of his evidence—in accordance with a memorandum made at the time and produced by him, that he served such attachment at 25 minutes past 1 o'clock, on said 16th of *July*. No evidence was exhibited tending to discredit the testi-

Middlesex,
July 1835.

Brainard
v.
Bushnell.

mony of this witness; but it was objected to, by the defendant, as inadmissible.

The plaintiffs read the deposition of *Warner* and examined *Bingham* as a witness, who testified, that they gave notice of the attachments by them respectively served on said goods, to the defendant, on the day, and at the times, or soon after, they were respectively served; that they had free and unreserved conversations with him, in reference to the attachments, and stated to him the names of the creditors and the amount of each; that they and the defendant looked over together and footed up the amounts of their several attachments, freely communicating with each other in relation thereto, and withholding nothing which was desired by either. No evidence was exhibited, by the defendant, tending to contradict the testimony of these witnesses; but he objected to the testimony introduced by the plaintiffs, on the ground that no notice would be legal or sufficient, unless copies of the several attachments and of the returns thereon were left with the defendant, or at least some writing containing the necessary notice; and that if written notice was not necessary, still the notice given was not sufficient or reasonable notice to the defendant; and prayed the court so to instruct the jury.

The court, in charging the jury, expressed no opinion relative to the admissibility of *Bingham's* testimony regarding the hour of the day when the attachment in favour of *Selden Fuller* was in fact served, and did not comment on that testimony, but charged the jury as follows: "1. That the law would not presume, nor was it a matter of legal construction, that the writ of attachment in favour of *Selden Fuller* was served, by *Bingham*, at the same time with any other of the intervening attachments, on the 16th of *July* 1829, as the defendant had claimed; and that the claim of the defendant constituted no objection to the plaintiffs' recovery. 2. That it was not necessary, that the officers who had attached the property subsequently to the attachment made by the defendant, should have left copies of the writs of attachment by them served, and the returns thereon, with the defendant, or any other written notice, as claimed by the defendant. But if the jury should find, that the defendant was informed, by the subsequently attaching officers, of the fact of such attachments upon the property in question, and also the names of the par-

ties thereto, so that he was reasonably informed, and within reasonable time, to whom it would be his duty to deliver the property attached, when the lien created by the attachment served by him would expire, and so that, by reasonable enquiry, he could ascertain all the particulars of such subsequent attachments, if he pleased, such notice was sufficient; and that the evidence introduced by the plaintiffs, for this purpose, was admissible.

The jury returned a verdict for the plaintiffs; and the defendant moved for a new trial, for a mis-direction.

*Hungerford* and *W. W. Ellsworth*, in support of the motion, contended, 1. That the defendant had a right to presume, that the writ of attachment in favour of *Selden Fuller* was served at the same time of day as the other attachments. *Beach* v. *Norton*, 8 *Conn. Rep.* 77, 8.

2. That in order to impose upon the defendant the custody of the property attached on the plaintiffs' writ, the defendant must have been legally notified; and that the notice requisite was an attested copy of the writ and officer's return, left with the defendant, by the subsequent attaching officer, together with such further evidence in writing as would enable the defendant to know the liens and order of liens upon the property, without further enquiry. In the first place, the statute prescribing service in analogous cases, requires such copy to be left, as in the attachment of bank shares, and of property in the hands of a garnishee. *Stat.* 36. 237.

Secondly, it would be unreasonable to require the defendants to take charge of the property upon evidence short of this. In the case of *Gates* v. *Bushnell*, 9 *Conn. Rep.* 530. it was settled, that the existence of a prior attachment could be proved only by the return of the officer; and that such return must be exact, and is the controuling guide for other officers.

Thirdly, this question does not stand upon the footing of a notice to charge a person with a fraud or breach of trust in chancery.

The notice in this case, was insufficient; because it was not in writing; because it did not specify the order of the liens; and because it did not enable the defendant to ascertain when the respective liens expired, or to whom he might apply to deliver the property. The least that ought to be exacted from an

attaching creditor, who makes a public officer a bailee for him, is, to inform him *distinctly*, that the property is attached by such creditor—upon what process—at what time—to what amount—to what court the writ is returnable—and that he demands of the officer that he shall keep the property for him, and if need be, at his expense; and give him the return to prove the statement.

*Goddard* and *R. S. Baldwin*, contra, contended, 1. That as all the classes of writs except *Fuller's*, were served *successively*, at the times noted, there is no ground for a presumption that *Fuller's* writ was served at the same time with either class, or with either one in preference to another. When the returns on several writs state the service of each *at the same moment*, on a specified day, the necessary conclusion is, that the liens created thereby are *cotemporaneous;* and proof is inadmissible that they were *intended* to take effect *successively.* This principle was adopted in *Gates* v. *Bushnell,* 9 *Conn. Rep.* 535. So, if several writs were returned generally, as served on a particular day, the presumption would be, that they were served at the same time, a day being regarded as *punctum temporis.* But in such case, if it becomes important, the actual times of service may be proved. *Williams* v. *Cheeseborough,* 4 *Conn. Rep.* 356. 360. Here, the moment of service of every attachment prior to *Fuller's*, is given. The rights of those attaching creditors had become fixed, before *Fuller's* was served. How, then, could he gain an equality with them, or either of them, by an omission of the officer to note the time of service of his writ on that day? Or, how could that omission deprive *Fuller* of his priority over the subsequent attachments? The other attachments were served at different times; and if *Fuller's* was served simultaneously with one of them, with *which* of them was it?

2. That the notice was sufficient. The law allows an attachment of goods, by one officer, in the hands of another; and as the prior officer is entitled to possession, notice of the second attachment is required, for the same reason, and in the same manner, as of a subsequent mortgage. The law in both cases being silent as to the form and manner, it follows, that *reasonable* notice will be sufficient. But it was never claimed, that a copy of such mortgage, or any thing more than verbal

notice, was necessary. In regard to the service of attachments, the law has directed what copies shall be left, and has provided *fees* for making them ; but none for copies to be left with a prior attaching officer.

What the notice given, in this case, was, appears from the testimony of the officers stated in the motion. The jury have found, that it was given in a reasonable time, and under such circumstances, that by reasonable enquiry, every particular could be ascertained. It was all the notice that *in practice* has ever been given.

CHURCH, J. Three exceptions have been taken, under the motion, to the opinions expressed by the judge at the trial.

1. That the jury were instructed, that it was neither a matter of legal presumption nor construction, that the writ in favour of *Selden Fuller* was served, by the officer *Bingham*, at the same time with any other of the intervening attachments served by him, on the 16th day of *July*, 1829, as the defendant had claimed.

It was determined, by this court, in the case of *Gates* v. *Bushnell*, 9 *Conn. Rep.* 530. that to preserve a lien created by attachment upon goods previously attached, by a different officer, it is indispensably necessary, that a demand be made upon the prior attaching officer within sixty days after pre-existing incumbrances are removed. It appears from the officer's returns upon the attachments levied prior to the plaintiffs', that they had been served at ten successive periods of time, on said 16th day of *July*, 1829 ; and it became material to determine whether *Selden Fuller's* writ had been served at yet another distinct time, so as to constitute eleven successive periods from which the existence of liens was to be computed, or whether it was served at the same time with some of the other attachments levied on that day. And it was admitted, that the demand made of *Bushnell*, the defendant, for the goods attached on the plaintiffs' writ, was in time, if *Selden Fuller's* attachment was made at a distinct time from either of the others ; but if at the same time, as the defendant claimed, then the plaintiffs' lien had before that time expired, and the demand was too late.

We know of no reason apparent from the officer's return upon *Fuller's* writ, why we are to suppose that writ was, ne-

cessarily, or even probably, served concurrently with any other; and certainly, there is no rule of law requiring any such presumption or construction. Attachments were levied, by the same officer, *Bingham*, at no less than six different periods, on the same day, upon the same property, and in favour of different creditors ; and the enquiry was very pertinently made at the bar, if *Fuller's* attachment was simultaneous with either of these, with which was it simultaneous? If the property attached had been land, and had been set off on executions, with which of the other creditors of the *Smith Manufacturing Company* would *Fuller* have been tenant in common? 1 *Sw. Dig.* 156.  13 *Mass. Rep.* 527.

2. It was also objected, that *Bingham*, the officer, was by the court permitted to testify, and that he did testify from a written memorandum, that *Fuller's* writ was in truth served at 25 minutes past 5 o'clock, *P. M.*, on said 16th day of *July*, and not at the same time with any of the other intervening attachments served by him, on the same day.

If the opinion already expressed be correct, it is clear, if this parol testimony of *Bingham* was inadmissible, it was harmless ; but that it was by law admissible, as well as consistent with the uniform practice in this state, we think, admits of no doubt. The return of the officer was not thereby contradicted ; but his testimony was entirely consistent with it. The officer, in his return, only stated *the day* on which he made service of the writ ; and he was bound to do no more : the officer, in his testimony, stated the *time of day*. *Williams* v. *Cheesborough*, 4 *Conn. Rep.* 356. A day, in legal consideration, is *punctum temporis*, and the law knows no fractions of it ; and yet, when justice requires, this maxim yields, and the exact time when an act was performed, may be shown, by parol evidence. So it is said, there is no progress of time in the term of a court ; still, for the purposes of justice, the day on which a judgment was rendered, may be proved : and where a town-clerk has made a general entry of the time when a deed or execution was lodged for record, the time of day, when it was so left, may be proved. 3 *Stark. Ev.* 1406. 1 *Ld. Raym.* 281.  3 *Burr.* 1243.  15 *Petersd. Abr.* 38. *Williams* v. *Cheeseborough*, 4 *Conn. Rep.* 356. *Cutler* v. *Wadsworth*, 7 *Conn. Rep.* 6. And this principle is not in-

consistent with any doctrine recognized by this court, in the case of *Gates* v. *Bushnell,* 9 *Conn. Rep.* 530.

3. Finally, it is said, that the court erred in instructing the jury, that it was not necessary that the officers who had attached the same property subsequently to the defendant, should have left with him copies of their several attachments and returns, or any other equivalent written notice; and of course, that the instructions to the jury regarding the sufficiency of the notice required by law in such cases, were also erroneous.

Copies of writs are by statute made necessary to be left in service, in several specified cases; but no law requires such copies to be left, or even written notice to be given, in cases like the present; and this court, without assuming legislative powers, cannot declare such notice to be necessary. That the defendant should have been notified, at some time, and in some manner, of the claims of the subsequent attaching creditors, to the goods by him attached, so that he might know when and how to perform his duty before becoming chargeable with a violation of it, was but reasonable; and therefore, by the general principles of the common law, was necessary; but no prescribed form or manner of notice was required. Nothing more was necessary than that the defendant should have been reasonably informed of such facts, as, when the lien of the attachment in his own hands was dissolved, he might have been enabled, if so disposed, to deliver the estate attached to the rightful claimant, and save himself from the demands of others; and to this effect were the instructions to the jury. *Story* on *Bailment* 92. *Roscoe* on *Ev.* 405. *Green* v. *Dunn,* 3 *Campb.* 215. *Solomon* v. *Dawes,* 1 *Esp.* 83. *Gunton* v. *Nurse,* 2 *Brod.* & *Bing.* 447. (6 *Serg.* & *Lowb.* 193.) *Alexander* v. *Southey,* 5 *Barn.* & *Ald.* 247. (7 *Serg.* & *Lowb.* 85.)

The motion for a new trial, we think, should be denied.

In this opinion the other Judges concurred, except WAITE, J., who gave no opinion, having been of counsel in the cause.

New trial not to be granted.