[Nos. 4019 and 4020.]

THE EAGLE GOLD MINING CO. V. BRYARLY ET AL.

THE EAGLE GOLD MINING CO., V. WAGNER ET AL.

1. PRACTICE—MECHANICS' LIENS—ABANDONMENT—ATTACHMENT.

The plaintiff in an action to enforce a mechanic's lien may at any time before judgment abandon his claim to a lien and proceed by attachment as in any action on a contract.

2. ATTACHMENT—CONSOLIDATION.

Where several parties have in the same court caused attachments to be levied upon the same property, in suits against the same defendant, it is the duty of the court, upon application for that purpose, to cause the cases to be consolidated under the provisions of the attachment act.

3. COUNTY COURTS—JURISDICTION—ATTORNEYS' FEES.

Under a statute providing for an attorney's fee to be taxed as costs an allegation in the complaint that a certain sum is a reasonable attorney's fee does not make that sum a part of plaintiff's claim and cannot be added to the amount sued for so as to make the amount involved exceed the jurisdiction of the county court.

4. MECHANICS' LIENS—CONSOLIDATION—ALIAS SUMMONS.

Where several cases to enforce mechanics' liens are consolidated an alias summons in the consolidated case is not required.

5. MECHANICS' LIENS—ASSIGNMENT—PLEADING.

The assignment of a claim entitled to a mechanics' lien carries with it the right to the lien, and in an action by the assignee to enforce the lien, where the complaint alleges the assignment of the claim, it is not necessary to allege in terms an assignment of the right to file a lien.

6. PRACTICE—SUMMONS BY PUBLICATION—DELAY.

In an action against a foreign corporation where summons was by publication, and where defendant was present by its attorney objecting to the service, a delay of four months, after the return of the sheriff that defendant could not be found in his county, before publication of summons, was not fatal to the service so as to justify the reversal of the judgment.

7. JUDGMENTS—RECORD—DATE OF ENTRY—PRESUMPTION.

Where two judgments are rendered on the same day and entered in the same record book, in the absence of proof to the contrary, it will be presumed that the clerk entered them in the order of their rendition

and that the judgment first entered in the record was the one first rendered.

8.  JUDGMENTS—EXCESSIVE—REMITTITUR—EXECUTION.

After execution has issued on an excessive judgment and property has been sold thereunder, it is too late to cure the defect by remitting the excess.

*Error to the County Court of San Miguel County.*

In September, 1896, The Eagle Gold Mining Company, a corporation organized under the laws of Arizona, owned certain mining property situated in San Miguel county, Colorado, known as the Summit lode mining claim and Summit tunnel site. During September, October, and November of that year, under alleged contracts with the company, the plaintiffs below, and others named in the complaints, performed labor as miners upon this property or furnished materials and supplies to be used in operating it. The claims of these other persons were assigned to the plaintiffs below, who filed mechanic's liens against the property within the time allowed by law. Afterwards six suits were begun against the company, by the filing of complaints, to obtain judgments and to foreclose these liens. These suits were:—

No. 725, F. H. Bryarly plaintiff, filed January 27, 1897, for $1,619.00 with interest, $3.60 expense of perfecting lien, $250.00 attorney's fee, and the costs of suit.

No. 726, H. H. Wilson plaintiff, filed January 28, 1897, for $1,201.00 with interest, $3.60 expense of perfecting lien, $250.00 attorney's fee, and costs of suit.

No. 729, William M. Wagner plaintiff, filed February 6, 1897, for $1,785.05 with interest, $3.10 expense of perfecting lien, $250.00 attorney's fee, and the costs of suit.

No. 730, F. H. Moore, as assignee, plaintiff, filed February 9, 1897, for $1,464.36 with interest, $3.35 expense of perfecting lien, $250.00 attorney's fee, and the costs of suit.

No. 731, Joseph Kent plaintiff, filed February 13, 1897,

for $1,098.50 with interest, $2.60 expense of perfecting lien, $100.00 attorney's fee, and the costs of suit.

No. 742, Charles Dollarhide plaintiff, filed April 26, 1897, for $444.50 with interest, $2.85 expense of perfecting lien, $75.00 attorney's fee, and the costs of suit.

Summons in each case was placed in the hands of the sheriff for service, and after ten days the sheriff made his return. In numbers 725 and 726 the form of the return was: "I do hereby certify that I have made diligent search and inquiry, and am unable to find the within named defendants, or any of them, within my county;" in numbers 729, 730 and 731: "I do hereby certify that I have made diligent search and inquiry and neither the president, secretary, treasurer or other chief officer of the defendant company, or any general agent, or any agent or stockholder of the defendant company, can be found in San Miguel county, State of Colorado;" and in number 742 the company appeared and filed a demurrer.

Affidavits for publication of summons in the cases severally were thereupon made by Robert H. Wilson, attorney for the plaintiffs, orders for publication were obtained, and publication was made.

The proof of publication was filed in the several cases, and shortly thereafter the company, appearing specially, moved to quash the summons in each of the cases.

On April 19, 1897, during the pendency of this motion, the court ordered all the cases, except No. 742; consolidated as No. 725.

On May 4, 1897, the motion to quash was sustained in No. 725, and the order for publication was set aside. This ruling was acquiesced in by the plaintiffs in the other cases.

On June 7, 1897, affidavits in attachment were filed in cases numbered 729, 730, and 731, and on June 11, in 742; attachments were issued for the full amounts claimed in the respective complaints except attorneys' fees and expenses of

perfecting lien, and were levied on the Summit lode mining claim and Summit tunnel site.

About June 14, 1897, new affidavits for publication were made and filed in all the cases separately, orders for publication were secured, and the proofs of publication were filed during the latter part of July.

About August 26, 1897, the defendant company appeared specially in each of the cases and moved to quash the summonses and to set aside the orders for publication. These motions were overruled.

On October 23, 1897, default was taken against the defendant company in the several cases, and on January 8, 1898, the court heard evidence in the cases and continued them for further hearing.

On February 15, 1898, number 742 was consolidated in number 725.

On the same day an order was made and entered of record in No. 729, Wagner v. The Eagle Gold Mining Company, et al, reciting that on motion of Robert H. Wilson, attorney for the plaintiffs in Nos. 730, 731, and 742, the plaintiffs in these cases "are joined as parties plaintiff" in said No. 729, for the purpose of the attachment proceedings.

On the same day the court entered judgment in No. 729 in favor of William M. Wagner for the sum of $1,784.40 principal and $173.19 interest; in favor of F. W. Moore in the sum of $1,123.59 principal and $121.13 interest; in favor of Joseph Kent in the sum of $1,098.50 principal and $105.21 interest; in favor of Charles Dollarhide in the sum of $444.-50 principal and $10.40 interest; and for the foreclosure of their attachment liens upon the Summit lode mining claim and Summit tunnel site.

On the same day the court entered judgment in consolidated case No. 725 for F. H. Bryarly in the sum of $1,619.00 principal, $142.70 interest, $3.60 expense of perfecting lien, $250.00 attorney's fee; for H. H. Wilson in the sum of $1,-

201.11 principal, $105.41 interest, $3.60 expense of perfecting lien, $250.00 attorney's fee; for William M. Wagner in the sum of $1,196.80 principal, $114.00 interest, $3.10 expense of perfecting lien, $250,00 attorney's fee; for F. W. Moore in the sum of $183.50 principal, $31.01 interest, $3 35 expense of perfecting lien, $75.00 attorney's fee; for Joseph Kent in the sum of $1,098.50 principal, $105.21 interest, $2.60 expense of perfecting lien, $100.00 attorney's fee; for Charles Dollarhide in the sum of $444.50 principal, $10.40 interest, $2.85 expense of perfecting lien, $75.00 attorney's fee; and that special execution issue for the foreclosure of the mechanic's liens.

On the same day a special execution issued in the attachment cases consolidated as No. 729, and on the 15th of March, 1898, the sheriff made return that he had sold the Summit lode and the Summit tunnel site under this execution, to William Wagner et al., for the sum of $6,739.86.

On April 13, 1898, special execution issued in consolidated case No. 725 for the foreclosure of the mechanics' liens, and the sheriff made return on the 23d of May, 1898, that under this execution he had sold the property mentioned, to F. H. Bryarly and H. H. Wilson, for the sum of $4,336.63.

By a supplemental abstract, the defendants in error show that the judgment in the attachment cases consolidated as No. 729 was recorded in book 7, at pages 3 and 4, of the county court records, and that the judgment in consolidated case No. 725 was recorded in the same book, at pages 6, 7, and 8.

Mr. L. L. NUNN, Messrs. STORY & STORY and Mr. ARTHUR BROWN for plaintiff in error.

Mr. M. B. GERRY, Mr. CALVIN E. REED and Mr. ROBERT H. WILSON for defendants in error.

Mr. JUSTICE STEELE delivered the opinion of the court.

There are eighteen assignments of error attacking every step in the proceedings from the issuance of the summons to the rendition of the judgment, except that the attachment proceedings are conceded to have been regular but for the previous consolidation of the cases in which the attachments were issued with cases numbered 725 and 726. We are of opinion that the plaintiff in an action to enforce a mechanic's lien may abandon his claim to a lien at any time before judgment, and proceed by attachment as in any action on a contract; and where several such parties have in the same court caused attachments to be levied upon the same property, in suits against the same defendant, it is the duty of the court, upon application for that purpose, to cause the cases to be consolidated under the provisions of the attachment act.

The other assignments of error will be substantially determined, we think, by a decision of the following:

1. That the amount demanded in original case No. 729 is in excess of the jurisdiction of the court.

2. That no summons was issued in consolidated case No. 725.

3. That the complaints in Nos. 725 and 726 do not show any right in the plaintiffs to a lien upon the assigned claims.

4. That the court erred in overruling the motion to quash the summons in each of the cases.

5. That the judgments rendered are excessive and double; and, having been rendered on the same day, are presumed to have been rendered at the same time, and must stand or fall together.

The objection that the amount demanded in No. 729 is in excess of the jurisdiction of the court, is based upon the proposition that the $250.00 asked as an attorney's fee in that case is part of the "debt, damage, or claim" of the plaintiff, within the provision of the constitution limiting the jurisdiction of county courts. The statute under which the case

was brought provides that a reasonable attorney's fee, to be fixed by the court at the time of rendering judgment, shall be taxed as part of the costs; and, if it were recoverable at all, it could be recovered by force of the statute without any allegation. The allegation that $250.00 was a reasonable attorney's fee to be recovered by the plaintiff would be rejected as surplusage but for the provision of the statute, and by the statute it is made costs, and cannot be considered in determining the jurisdiction of the court.

The statute applicable to mechanic's lien cases does not require the issuance of an *alias* summons under the facts shown in consolidated case No. 725.

The objections to the sufficiency of the complaints in original cases 725 and 726 are decided adversely to the contentions of the plaintiff in error in the case of *The Rialto Mining Co. v. Lowell*, 23 Colo. 253, except as to the objection that the complaints should have alleged in terms an assignment "of the right to file a lien for the demands in the several complaints alleged to have been assigned to the plaintiffs." The complaints allege the assignment to the plaintiffs of the "claim and demand" of the person entitled to perfect a lien. We think the assignment of the claim carries with it the right to the lien.

The most difficult question in the case is that raised upon the motions to quash the summonses. The returns of the sheriff upon these summonses were made during the period from February 8, to February 23; and, owing to a successful attempt on the part of the plaintiff to quash the first publication, publication was not made until about June 14, a period of more than four months. A new affidavit was, however, made in each case upon the day that the order was obtained, and the publication followed immediately. Section 41 of the code, as amended April 5, 1893, laws of 1893, p. 77, provides that: "Service by publication shall be allowed only after summons issued and return thereon made

that the defendant after diligent search cannot be found. After such return not less than ten days after issue of summons publication shall be made by order of the clerk of the proper court, *  * * after return is made as aforesaid the case being such as hereinbefore mentioned, the plaintiff or one of the plaintiffs may file in the office of the proper clerk, an affidavit stating that the defendant resides out of the state, * * * whereupon the order of publication shall be made by the clerk." This statute is peculiar. The common provision in the statutes of other states is that the order for publication may be granted upon the filing of an affidavit containing the matters required here, but without making the return of the sheriff either a condition precedent to, or one of the steps in, the application for the order. Under our statute the return of the sheriff must be regarded as an essential step in the procuring of the order for publication; and as having been made essential because of its probative force in establishing that, at the time of the publication, the summons could not be served upon the defendant in the county in which the action was pending. Starting at this point, it is contended by the plaintiff in error, that to confer jurisdiction upon the court by a publication of the summons under this statute, there must be no interruption in the proceedings from the time of the return of the sheriff to the obtaining of the order for the publication of the summons. It is apparent from an examination of this statute that the return of the sheriff was not intended by the legislature to be made the basis of the order for publication, because the service is only to be attempted in the county where the suit is brought, and the information that the defendant is a non-resident is contained only in the affidavit made by the plaintiff. And it could not have been expected that the affidavit should, in all cases, be filed immediately upon the return of the sheriff; because, in the affidavit the plaintiff is required to allege, for instance, that the defendant has departed from this state

without the intention of returning. Until return was made, he may have supposed that the defendant would be served by the sheriff; and before he can make this affidavit, he must have made some investigation, not only in that county but elsewhere in the state, as to the whereabouts of the defendant. Some delay being evidently not fatal to the court's jurisdiction, and the code not having fixed the time within which the publication shall be made after the return of the sheriff, and the several steps having been taken in the order required by the code, the question presented to the court below on the motion to quash was, whether or not, under the circumstances of this case, the delay was such that the court ought to refuse to entertain jurisdiction of the case further than to quash the service. The court undoubtedly had jurisdiction to pass upon that question; and, having jurisdiction to pass upon it, its judgment is not void but, at most, erroneous; and it ought not to be reversed unless, in the matter complained of, it operated injuriously to some substantial right of the defendant. If it was manifestly and clearly of no use to require the plaintiff to again place the summons in the hands of the sheriff for ten days and have a new return made, that the defendant, after diligent search was not to be found in his county, there was no necessity for doing so. It appears from the complaints and from the affidavits that the defendant is a foreign corporation. It appears from the return of the sheriff that the defendant was not to be found in his county in February. It appears from the affidavit filed at the time of obtaining the order for publication that the defendant, a foreign corporation, resided without the state; and there is nothing in the record from first to last to indicate that the defendant ever engaged in business within this state. We are sensible that four months is an extremely long time to elapse between the return and the publication, but a foreign corporation is not so likely to change its residence as an individual is; and the fact that a

foreign corporation could not be served with process by the
sheriff of San Miguel county in February is pretty strong
evidence that it could not have been served there in the fol-
lowing June. And besides all this, the defendant was pre-
sent by its attorney, objecting to the sufficiency of the ser-
vice, and finally, relying upon a supposed technical error in
the proceedings, withdrawing from the case and permitting
it to go to judgment; and it is not now in so good a position
to complain of a technical irregularity in the course of the
proceedings as a defendant would be that had never had an
opportunity to appear and defend.

The judgments rendered in the attachment cases (No.
4020 here) are not excessive; the judgments rendered in the
consolidated case No. 725 (No. 4019 here) are both excessive
and double, one thousand dollars thereof being for attorney's
fees, and several thousand dollars for the causes included in
the attachment cases. It becomes important therefore, to
ascertain when these judgments were rendered. The record
shows that they were rendered on the 15th day of February,
1898. It is contended that the court will not recognize a
fraction of a day, and that it cannot be ascertained from the
record which of these judgments—the judgment enforcing
the mechanics' liens or the judgment sustaining the attach-
ments—was rendered first. The record kept by the clerk
must guide us in determining this question. It is the clerk's
duty to enter judgment as and in the order in which the
court pronounces it; and it will be presumed that the clerk
has so performed his duty. It appears from the record that
on pages 3 and 4 of book 7 of the records of the court,
the judgment was entered in the cases consolidated as
No. 729, being the attachment cases; and on pages 6, 7 and
8 of the same record, the judgment was entered in consoli-
dated case No. 725, being all the cases. It appears from the
record that the judge acted as his own clerk, and the same
presumption must apply to him.

This court held in *Parks v. Soldiers' and Sailors' Home,* 22 Colo. 86, that, in reference to which of several appropriation bills should have preference in case of a deficiency of appropriation, priority should be given as of the time of day of the taking effect of the several acts. And in the case of *Biggam v. Merritt,* 12 Am. Dec. 576, it was held that if two judgments appear to have been entered on the same day, the court will ascertain which was first entered, and give it the preference. The court says: "It would appear both just and reasonable, when time is necessary to be considered in order to determine the substantial rights of a party, that the court should discard all these fictions of law sometimes necessary to preserve the harmony and symmetry of its proceedings, and consider it in its various divisions. The court will not endure that a mere fiction at law, introduced for the sake of justice, shall work a wrong."

In the absence of proof to the contrary, it must be presumed that the judge rendered the judgments in these cases in the order in which they appear in the record; namely, that in the four cases in which attachments were issued he rendered judgment and ordered special execution; and in the six cases, including the four in which judgment has been rendered, he subsequently rendered judgment and ordered the property sold to satisfy the mechanic's liens.

Counsel for the defendants in error concede that these two judgments cannot both stand, and have offered to remit in consolidated case No. 725 the amount of the attorney's fees and the entire amount included in the judgment for the plaintiffs in the cases originally numbered 729, 730, 731 and 732. It appears from the record that an execution was issued on the judgment in consolidated case No. 725, property was sold under the execution and a certificate of sale given by the sheriff. After property has been sold upon execution it is to late to remit, and it has been so held in the case of *Miller v. Glass,* 11 Ill. App. 560.

It follows that the judgment in case No. 4020 should stand, and as to that case the judgment of the lower court is affirmed.

No. 4019 is reversed for the errors pointed out, and remanded for further proceedings.

*No. 4020 Affirmed.*

*No. 4019 Reversed.*